## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 19 2017, 6:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leonard A. Taylor, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 19, 2017

Court of Appeals Case No.
20A04-1705-PC-1149

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1604-PC-22

**Mathias, Judge.**

[1] Leonard A. Taylor, Jr. ("Taylor") appeals the Elkhart Circuit Court's denial of his petition for post-conviction relief arguing that he received ineffective assistance of counsel and that his guilty plea was illusory.

[2] We affirm.

## Facts and Procedural History

[3] On July 5, 2014, Taylor and a second man attempted to rob a clerk at Saleh's Supermarket in Elkhart, Indiana. During the attempted robbery, Taylor fired a shot through the pay window. He was charged four days later with Level 3 felony attempted robbery and Level 6 felony criminal recklessness. Taylor agreed to plead guilty to attempted robbery, and the State agreed to dismiss the criminal recklessness charge. The closed plea called for a sentence of fourteen years, with ten years executed in the Indiana Department of Correction and four years suspended to probation.

[4] On November 24, 2014, LaPorte County dismissed a separate pending felony charge against Taylor for receiving stolen property.[1] At Taylor's guilty plea hearing on March 19, 2015, Taylor was asked if he was currently "[u]nder a withheld or suspended sentence or on bond for any other offense." Ex. Vol., Petitioner's Ex. 1 p. 13. He responded, "Yes, sir," and referenced the already

---

[1] Taylor was charged with Class D felony receiving stolen property on October 16, 2013. In that case, the court decided to conditionally withhold judgment for one year. The case was dismissed on November 24, 2014. Taylor was being held in the Elkhart County Jail from July 2014 to March 2015.

dismissed receiving stolen property charge. Subsequently, the following exchange took place between the court and Taylor's trial counsel:

> [Court]: [Counselor], are there situations here that would give rise to consecutive or nonsuspendible sentencing?
>
> [Counsel]: Yes, Judge. It would be consecutive to the La[P]orte County case and because of that case the plea agreement it would be nonsuspendible.

*Id.* at 14. The court accepted Taylor's plea, and sentenced Taylor to the terms of it on April 16.

Taylor filed a petition for post-conviction relief on April 29. On June 2, counsel entered an appearance on Taylor's behalf, and he filed an amended petition on November 17. The post-conviction court held an evidentiary hearing on January 19, 2017. The court found that Taylor did not receive ineffective assistance of trial counsel and denied his petition for post-conviction relief. Taylor now appeals.

## Discussion and Decision

The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, we do not reweigh evidence nor judge the credibility of witness; therefore, to prevail, the petitioner must

show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

[7] Where here, the post-conviction court makes specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id.* Accordingly, we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## I. Ineffective Assistance of Trial Counsel

[8] Taylor contends that the post-conviction court clearly erred when it denied his claim of ineffective assistance of trial counsel. Here, Taylor pleaded guilty; therefore, to prevail on a claim of ineffective assistance of counsel, Taylor must satisfy a two-pronged test: (1) that trial counsel's performance fell below an objective standard of professional reasonableness, and (2) that there is a reasonable probability that, but for trial counsel's errors, Taylor would not have pleaded guilty and insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58–59 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[9] There are two types of ineffective assistance of trial counsel claims generally made in the context of guilty pleas: (1) the failure to advise the defendant on an

issue that impairs or overlooks a defense, and (2) an incorrect advisement of penal consequences. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied* (citing *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001)). Taylor contends that his trial counsel's performance was deficient because he failed to advise Taylor that his sentence could be suspended, and that he would have proceeded to trial had he received accurate sentencing advice. Thus, Taylor's claim falls under *Segura's* second category. In *Segura*, our supreme court explained:

> [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

749 N.E.2d at 507. Put another way, the petitioner must allege: (1) that he would not have pleaded guilty, and (2) that a reasonable defendant would have rejected the plea had the petitioner's trial counsel performed adequately. *Willoughby*, 792 N.E.2d at 564.

[10] Taylor analogizes his trial counsel's performance here to that of counsel in *Reeves v. State*, 564 N.E.2d 550 (Ind. Ct. App. 1991), *trans. denied*. In that case, this court found that counsel's performance was deficient because he advised Reeves that the State would file a habitual offender charge against him—even

though Reeves was not eligible—if he refused to accept the plea bargain. *Id.* at 552. Counsel's misinformation induced Reeves to believe that his choice was between a plea agreement with a maximum or fifteen years or going to trial with the prospect of a sixty-year sentence due to the improper habitual offender charge. We held that the thirty-year difference in potential sentencing played a significant part in Reeves's plea negotiations and thus rendered the plea involuntary. *Id.* at 553.

[11] At the guilty plea hearing, the court asked Taylor's counsel if there were any situations "that would give rise to consecutive or nonsuspendible sentencing?" Ex. Vol., Petitioner's Ex. 1 p. 14. Taylor's counsel responded, "Yes, Judge. It would be consecutive to the La[P]orte County case and *because of that case* the plea agreement it would be nonsuspendible." *Id.* (emphasis added). The "case" to which trial counsel refers was a pending felony against Taylor that was dismissed over four months prior to the guilty plea hearing. Thus, "that case" did not exist, and there was no felony that would have disqualified Taylor from the possibility of receiving a fully suspended sentence.

[12] Taylor's trial counsel's failure to review Taylor's criminal history to discover that he had no prior felony conviction constituted deficient performance. Had trial counsel made this finding, he could have adequately advised Taylor that a conviction at trial could have resulted in an entirely suspended sentence, however unlikely. *See Black v. State*, 54 N.E.3d 414, 427 (Ind. Ct. App. 2016) (holding that a failure to advise a client of the maximum sentence he would face

at trial constitutes deficient performance), *trans. denied*. He also could have negotiated Taylor's plea from an entirely different and more favorable position.

[13] However, while we find that Taylor's trial counsel's performance was deficient, Taylor must also establish prejudice: that a reasonable defendant in his position would have rejected the plea had his counsel performed adequately. *Willoughby*, 792 N.E.2d at 564.

[14] Taylor contends that "[a] reasonable hypothetical defendant would have elected to go to trial if the judge could impose a suspended sentence." Appellant's Br. at 19. In support, he cites to this court's decision in *Springer v. State*, 952 N.E.2d 799 (Ind. Ct. App. 2011), *trans. denied.* In that case, trial counsel improperly advised Springer that he had the choice of accepting a plea agreement with a maximum possible sentence of 100 years, or going to trial with the prospect of receiving sentences totaling 141 years due to consecutive habitual offender enhancements. The actual maximum sentence Springer faced at trial was 111 years. A panel of this court reversed the post-conviction court and explained "that Springer demonstrated at least a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised." *Id.* at 807.

[15] *Springer* differs in at least two important aspects from case before us. First, Springer indicated during his post-conviction hearing that he pleaded guilty because he felt he would die in prison if he chose not to. And second, Springer was incorrectly told by counsel that he faced an additional thirty-year sentence

due to a consecutive habitual offender enhancement that he was not eligible for. Here, Taylor was not incorrectly advised that he faced additional time, but rather his counsel failed to recognize that had Taylor proceeded to trial, he *could* have received a fully suspended sentence. There is a significant difference between a defendant being led to believe that he faces significant additional jail time such that he may likely die in jail by choosing not to plead, and being misadvised as to whether or not a defendant's sentence is eligible to be fully suspended. And here, Taylor was never told by trial counsel that that he faced an erroneous amount of additional jail time. *Cf. Reeves*, 564 N.E.2d at 553 (finding ineffective assistance of counsel where Reeves was improperly advised that he faced a sentence of sixty years when in reality the maximum would only have been thirty years).

[16] Additionally, when considering whether Taylor was prejudiced by his trial counsel's deficient performance, it is appropriate to consider both the strength of the State's case and the benefit Taylor received by choosing to plead guilty. *Suarez v. State*, 967 N.E.2d 552, 556 (Ind. Ct. App. 2012), *trans. denied.*

[17] The State's evidence against Taylor was overwhelming. Taylor admitted to police that he fired the gun in the convenience store. Appellant's App. Vol. II, p. 15. Taylor admitted that he pointed the gun at the clerk and demanded money. *Id.* Taylor identified himself as the suspect in the convenience store's surveillance video. *Id.* And Taylor identified the gun found in his vehicle as the same one he used in the commission of the crime. *Id.* For these reasons, we

conclude that Taylor's prospect of success at trial was low. *See Clarke v. State*, 974 N.E.2d 562, 569 (Ind. Ct. App. 2012).

[18] Moreover, Taylor received a meaningful benefit by virtue of his decision to plead guilty. Taylor faced maximum sentences of sixteen years for attempted robbery and two and one-half years for criminal recklessness. Ind. Code §§ 35-50-2-5(b); 35-50-2-7(b) (2014). Because Taylor's crimes occurred during a single episode of criminal conduct, and neither charge constituted a crime of violence, any consecutive term could not exceed seventeen and one-half years. Ind. Code § 35-50-1-2(c) (2014). At the time Taylor pleaded guilty, he had no prior felony convictions and his juvenile criminal history did not include any crimes that would have been felonies if committed by an adult. Therefore, under Indiana Code section 35-50-2-2.2 (2014), Taylor's sentence theoretically could have been entirely suspended.

[19] Taylor's guilty plea resulted in fourteen years, with ten years executed in the Department of Correction and four years suspended to probation. Thus, Taylor received three and one-half years less that the maximum sentence he could have received had he proceeded to trial. Additionally, as part of the plea the State dropped the Level 6 felony criminal recklessness charge—which likely would have resulted in a second felony conviction, and a sentence ranging between one-half and one and one-half additional years, had Taylor proceeded to trial. Therefore, Taylor received a favorable benefit by choosing to plead guilty.

[20] Based on these facts and circumstances, we find that Taylor has failed to show that there was an objectively reasonable probability that he would have decided not to plead guilty but for his counsel's failure to advise him that he *could* have received a fully suspended sentence. *See Black*, 54 N.E.3d at 428 (finding no prejudice where the State's evidence against the defendant was great and the defendant's guilty plea reduced his potential sentence from fifty-three years to fifty years).

## II. Illusory Guilty Plea

[21] Taylor also argues that his plea was illusory "because he was misadvised that his sentence was non-suspendible." Appellant's Br. at 21. A plea bargain that is motivated by an improper threat is deemed illusory and is a denial of a defendant's substantive rights. *Roberts v. State*, 953 N.E.2d 559, 563 (Ind. Ct. App. 2011), *trans. denied.* The moment the defendant enters into the guilty plea, the State must possess the power to carry out any threat that was a factor in obtaining the plea. *Id.* The *Segura* standard discussed above applies equally to claims of involuntary or illusory plea claims. *Id.* at 564.

[22] Taylor contends that his guilty plea resulted from an illusory threat that he had to serve an executed sentence. However, there was no improper threat in this case. Even though Taylor was eligible for a fully suspended sentence, there is no guarantee he would have received one. In fact, because Taylor's deal was for fourteen years and he faced a maximum of sixteen years on the Level 3 felony alone, Taylor could have received additional executed time in the Department of Correction on the Level 6 felony had he decided to go to trial.

Taylor was not in a situation similar to the defendants in *Reeves* and *Springer* where each pleaded guilty primarily because they were erroneously threatened with significant *additional* jail time. *See also Nash v. State*, 429 N.E.2d 666, 672 (Nash's plea was illusory because he pleaded guilty based on the "possibility of a substantial amount of time being tacked on to his sentence by virtue of [] improper habitual offender counts."). Indeed, Taylor risked additional time without his guilty plea. In sum, Taylor has failed to prove that his guilty plea was illusory.

## Conclusion

Because Taylor was not subjected to ineffective assistance of counsel, and his guilty plea was not illusory, we affirm the post-conviction court's denial of his petition for post-conviction relief.

Affirmed.

Vaidik, C.J., and Crone, J., concur.